

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

---

JSK/CS/PLAGR
2018R00286

*970 Broad Street, 7th floor*
*Newark, New Jersey 07102*

*973-645-2700*

February 28, 2024

Michael Robertson, Esq.
O'Toole Scrivo LLC
14 Village Park Road
Cedar Grove, New Jersey 07009

**RECEIVED**

**MAR 27 2024**

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Re:   Rule 11(c)(1)(C) Plea Agreement with John Sabo
      Criminal Action No. 24-209-01 (MAS)

Dear Mr. Robertson:

This letter sets forth the plea agreement between your client, John Sabo ("SABO"), and the United States Attorney for the District of New Jersey ("this Office"). This offer will expire on March 4, 2024, if it is not accepted in writing by that date. If SABO does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

Charge

Conditioned on the understandings specified below, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), this Office will accept a guilty plea from SABO to a one-count Information which charges SABO with wire fraud in violation of Title 18, United States Code, Section 1343. If SABO enters a guilty plea and is sentenced to 0 to 24 months' imprisonment followed by three years' supervised release on this charge (the "Stipulated Range") and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against SABO for the fraudulent scheme to misappropriate payments made to SABO by victims seeking financing for their business projects, as described in the criminal complaint filed in *United States v. John Sabo*, 22-mj-15298 (ESK).

But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against SABO even if the applicable statute of limitations

period for those charges expires after SABO signs this agreement, and SABO agrees not to assert that any such charges are time-barred.

If the Court rejects this plea agreement, SABO may withdraw his guilty plea. Whether or not he does, if the Court rejects this plea agreement, this Office may withdraw from it. If the Court defers a decision to accept the plea agreement until the Court has reviewed the presentence report pursuant to Rule 11(c)(3)(A), SABO will not move to withdraw his guilty plea unless and until the Court rejects the plea agreement.

Sentencing

The violation of 18 U.S.C. § 1343 to which SABO agrees to plead guilty carries a statutory maximum prison sentence of 20 years, and a statutory maximum fine equal to the greatest of: (1) $250,000, (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

Pursuant to Rule 11(c)(1)(C), this Office and SABO agree that a sentence within the Stipulated Range is the appropriate disposition of the case. Accordingly, if the Court accepts this plea agreement, the Court must sentence SABO to no more than 24 months' imprisonment followed by three years' supervised release.

Further, in addition to imposing any other penalty on SABO, the sentencing judge as part of the sentence:

(1)  will order SABO to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2)  must order SABO to pay restitution pursuant to 18 U.S.C. § 3663A;

(3)  may order SABO, pursuant to 18 U.S.C. § 3555, to give reasonable notice and explanation of the conviction to any victims of his offense;

(4)  must order forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; and

(5)  if SABO violates any of the conditions of supervised release before the expiration of its term, SABO may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution

      Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, SABO agrees to pay full restitution to the victims of the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense in an amount that fully compensates the victims for the losses sustained as a result of that offense.

Forfeiture

      As part of SABO's acceptance of responsibility, and pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), SABO agrees to forfeit to the United States all of his right, title, and interest in any property, real or personal, which constitutes or was derived from proceeds SABO obtained that are traceable to the offense charged in the Information. SABO further acknowledges that the aggregate value of such property was $4.205 million; that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists; and that the United States is entitled to forfeit substitute assets equal to the value of the proceeds obtained by the defendant, in an amount not to exceed $4.205 million (the "Money Judgment"). SABO consents to the entry of an order requiring SABO to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to SABO prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

      All payments made in full or partial satisfaction of the Money Judgment shall be made by postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Recovery and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102

      SABO further agrees that upon entry of the Order, this Office may conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

      SABO waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. SABO understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise SABO of this pursuant to Fed. R. Crim. P. 11(b)(1)(J) at the guilty plea proceeding. SABO waives all constitutional, statutory, and other challenges to the forfeiture on all grounds, including that the forfeiture constitutes an excessive fine or punishment under the

Eighth Amendment. SABO further understands that SABO has no right to demand that any forfeiture of SABO's assets be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon SABO in addition to forfeiture.

SABO further agrees that, not later than the date SABO enters a guilty plea, SABO will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If SABO fails to do so, or if this Office determines that SABO has intentionally failed to disclose assets on the Financial Disclosure Statement, that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on SABO by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of SABO's activities and relevant conduct with respect to this case.

Stipulations

This Office and SABO will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. The stipulations in Schedule A are offered as recommendations to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

Waiver of Appeal and Post-Sentencing Rights

If the Court imposes a sentence within the Stipulated Range, neither party will appeal that sentence. In addition, except as specified in the next paragraph below, and in exchange for the concessions this Office made in entering into this plea agreement, SABO will not challenge by any means his conviction or any component of his sentence. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(B) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence.

Both parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

(1) Any proceeding to revoke the term of supervised release.

(2) A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

(3) An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

(4) Any claim SABO pursues in an appropriate forum, when permitted by law, that SABO received constitutionally ineffective assistance of counsel.

Immigration Consequences

SABO understands that, if SABO is not a citizen of the United States, SABO's guilty plea to the charged offense will likely result in SABO being subject to immigration proceedings and removed from the United States by making SABO deportable, excludable, or inadmissible, or ending SABO's naturalization. SABO understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. SABO wants and agrees to

plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause SABO's removal from the United States. SABO understands that SABO is bound by this guilty plea regardless of any immigration consequences. Accordingly, SABO waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. SABO also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against SABO. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

No Other Promises

This agreement constitutes the entire plea agreement between SABO and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

PHILIP R. SELLINGER
United States Attorney

By: *Jennifer Kozar*
Jennifer S. Kozar
Carolyn Silane
Assistant U.S. Attorneys

APPROVED:

*[signature]*

Desiree L. Grace
Deputy Chief, Criminal Division

      I have received this letter from my attorney, Michael Robertson, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and I accept those terms. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____  Date: 2/29/2024
John Sabo

      I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and my client accepts those terms. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____  Date: 02/29/2024
Michael Robertson, Esq.
Counsel for Defendant

- 8 -

<u>Rule 11(c)(1)(C) Plea Agreement With John Sabo</u>

<u>Schedule A</u>

This Office and John Sabo ("SABO") agree to stipulate to the following facts:

1. From in or around November 2014 through the present, SABO induced victims to collectively pay millions of dollars in fees to Bankers Capital, LLC, a limited liability company owned and controlled by SABO ("Bankers Capital"), in exchange for SABO's promise to provide millions of dollars in collateral and/or secure millions of dollars in financing for each of the victims' business projects.

2. To induce the victims to pay fees to Bankers Capital, SABO misrepresented that he and/or Bankers Capital had procured or possessed medium-term notes, carbon credits, and other forms of collateral that would be used to secure multi-million dollar loans or other financing for the victims.

3. SABO and Bankers Capital ultimately failed to provide the collateral or to secure the financing promised to the victims.

4. Instead of using the victims' fees for financing-related purposes as SABO claimed, he repeatedly diverted fees totaling millions of dollars out of Bankers Capital's accounts and used them for SABO's personal expenses, outstanding personal debts, and to pay back other victims of the fraudulent scheme.

5. To lull victims and, in some cases, to induce them to pay additional fees, SABO sent frequent e-mails to the victims assuring them that he was working hard to fulfill his promises and secure financing.